IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KENNETH W. MOORE                                                                                          PLAINTIFF

v.                                    CIVIL NO.          2:10-CV-02176

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                        DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 10, 2007, alleging disability since January 1,2007, His applications were denied initially and upon reconsideration.  Plaintiff subsequently requested a hearing, and a hearing was held on March 11,2009, before an Administrative Law Judge (ALJ). Plaintiff, who was represented by an attorney, appeared and testified at the hearing as did Darlene McCalister, his mother, and Montie Lumpkin, a vocational expert On September 25,2009, the ALJ issued a decision denying all benefits to Plaintiff.

(T.57-58). The Appeals Council (AC) denied Plaintiffs request for review of the ALJ's Decision on October 27,2010. (T. 1). Consequently, the ALl's decision of September 25, 2009, became the final decision of the Commissioner from which this appeal is taken.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); see 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Applicable Facts**

On June 8, 2006 the Plaintiff reported to Cooper Clinic because of a back injury suffered at work on that date (T. 196 & 198). He was placed on limited standing and sitting. (Id.). On June 13, 2006 he was seen at the clinic for a check up and it was noted that he had a spasm that "bugs him a little" (T. 195). He had limited pulling and pushing to 25 pounds and no lifting over 25 pounds (T. 194). On June 19, 2006 Plaintiff went back to the clinic and they noted that he was "doing better". (T. 193). On July 8, 2006 he was still on limited duty and Dr. McLellan prescribed Lodine for pain and inflamation and Norflex. (T. 197).

On October 17, 2007 the Plaintiff filed for DIB (T. 110-116) and SSI (T. 107-109)

alleging an onset date of January 1, 2007 (T. 135) because of a spinal condition (T. 139).

On October 22, 2007 the Plaintiff was seen by Dr. Cheyne at St. Edwards Mercy Medical Center Emergency Room for chronic back pain with no injury (T. 215-216). Dr. Cheyen prescribed Mobic and Lortab and restricted the Plaintiff to light activity, hot showers and suggested that he see a "neurosurgeon a.s.a.p." (T. 218). Dr. Cheyne diagnosed the Plaintiff with Tethered cord syndrome. (T. 219).

On November 19, 2007 three x-rays were taken of the Plaintiff's lumbar spine. Dr. Fareeda A Al-Refai, MD, diagnosed the Plaintiff with 1) Anterior wedging of T12 and L1 more prominent at T12, and 2) Loss of the normal lordotic curvature of the lumbar spine with mile kyphosis at the level of T10 through L2 (T. 206).

On November 26, 2007 the Plaintiff was seen by Dr. Hoang for a consultive examination. Dr. Hoang noted a history of "borderline intelligence" and back pain caused by a congenital spinal cord malformation (T. 199). The Plaintiff's ROM was normal (T. 202) but he did note muscle atrophy on the right leg below the knee. The right mid calf measured 27 ½ cm, and the left 31 cm, but the Plaintiff's gait was normal (T.203). Dr. Hoang diagnosed the Plaintiff with 1) congenital spinal cord malformation, 2) secondary chronic low back pain, 3) secondary atrophied muscle on right leg, and 4) weakened right leg. Dr. Hoang felt that the Plaintiff would have "moderatley sever physical limitations for gainful persistent job requirements" (T. 205).

On January 2, 2008 a non examining consultive Physical RFC was performed by Dr. David Hicks. Dr. Hicks determined that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, that he could stand and/or walk and sit for 6 hours in an 8 hour workday and that he was limited in his lower extremities (T. 208). He also determined that he could only

occasionally climb, balance, stoop, kneel, crouch and crawl (T. 209).  On February 12, 2008 Dr. Jerry Thomas reviewed and concurred with the opinion of Dr. Hicks (T. 221-225).

On March 12, 2008 the Plaintiff was seen by Dr. Cygnet Schroeder, D.O. for a consultive examination.  Dr. Schroeder noted that the review of the Plaintiff's spine "shows a scoliosis with visible curvature involving the back and muscle asymmetry".  She also noted a shortened leg on the right with "visible muscle asymmetry throughout all muscle groups on that side."  The Plaintiff was unable to toe or heel walk, or tandem gait with significant balance loss due to leg length discrepancy and weakness.  Manual motor testing revealed 4 over 5 on effected leg. (T. 226).  Dr. Schroeder's impressions were 1) Tethered Cord Syndrome by history, 2) Residual monoparesis, 3) Leg length discrepancy, 4) Gait abnormality, 5) Scoliosis and 6) History of thyroid lymphoma.  Post chem.

On March 28, 2008 Dr. Jerry Thomas, a non examining physician, performed a Physical RFC and found the Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently, could stand and/or walk at least 2 hours in an 8 hour workday, and could sit about 6 hours in an 8 hour workday. (T. 232)

**IV.   Discussion**:

The ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (T. 53).

**A. Listed Impairment**

    **1. Burden of Proof**

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

  Plaintiff contends that the ALJ should have found that he had severe borderline intellectual functioning at step two. See Pl.'s Br. at 7. Plaintiff did not allege that he had borderline intellectual functioning or any other mental impairment in his application documents (Tr. 139, 168, 178, 183). It is significant evidence when a claimant does not allege an impairment as disabling either in his application or at the hearing. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993) (the fact that a claimant does not allege a disabling mental impairment in his disability application documents supported ALJ's discounting of psychiatrist's report). The fact that the plaintiff did not allege any mental impairment as a basis for his disability in his application for disability benefits is significant, even if the evidence of a mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

  The Plaintiff contends that his consulting examination physician "diagnosed" the Plaintiff with borderline intellectual functioning. A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence. *See*

-6-

*Nicola v. Astrue,* 480 F.3d 885, 887 (C.A.8 (Iowa),2007) *citing Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir.2001).

In this case there is no diagnosis of borderline intellectual functioning. In the Plaintiff's History in his CE by Dr. Hoang the Plaintiff stated that he had "Borderline intelligence (special aid student)" (T. 199) but Dr. Hoang did NOT diagnose the Plaintiff with Borderline Intelligence (T. 205). The Plaintiff's own CE physician, Dr. Schroeder noted that the Plaintiff was "slow to respond and process information" and that he did have some problems with "higher executive functioning in conversation, but that he was "appropriate" (T. 226). Dr. Schroeder did not diagnose the Plaintiff with borderline intellectual function (T. 227). Dr. Schroeder noted in her Discussion that the Plaintiff's intelligence "appears to be borderline". (Id.) In point of fact there is NO diagnosis of borderline intellectual functioning anywhere in the file.

The court also notes that the Plaintiff never received any treatment for borderline intellectual functioning. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

**2. Failure to Develop the Record**

Plaintiff contends that the ALJ should have obtained a mental consultative examination. See Pl.'s Br. at 7-8.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v.*

*Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Although the ALJ is required to fairly and fully develop the record in a social security disability benefits case, he is not obliged to investigate a claim not presented at time of the application for benefits and not offered at hearing as a basis for disability. *Halverson v. Astrue* , 600 F.3d 922 (C.A.8 (Ark.),2010).  *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (ALJ not obligated to investigate a claim not presented at the time of application for benefits and not offered at the hearing as a basis for disability); *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (claimant did not allege depression in his application or during his testimony – ALJ has no obligation to investigate a claim not presented at the time of application and not offered at the hearing as a basis for disability).

Neither the Plaintiff or his mother testified that the Plaintiff had Borderline Intellectual functioning or that it had any impact upon his ability to work.  There were no medical records showing that the Plaintiff had any mental impairment or had ever been treated for a mental impairment.  The Plaintiff failed to meet his burden of proof that the Plaintiff had a listed impairment and the ALJ decision that the Plaintiff did not have a listed impairment is supported by substantial evidence.

**B.  Credibility**

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC. (Tr. 54-55).

The Plaintiff made numerous complaints of subjective pain. The Plaintiff testified that if he sits or stands for too long (30 minutes to 1 hour) he will get a migraine headache and that his leg will go numb and turn blue. (T. 29). He testified that he had pain every day (T. 30) and had difficulty driving (T. 31). He also stated that his right hip down to his foot is "almost completely numb". (Id.).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities;**

The Plaintiff's Function Report indicated that his condition affected lifting, standing, walking, sitting (slightly), climbing stairs, kneeling, squatting and bending. (T. 154). He could

take care of his personal needs but "it took longer than it used to". (T. 150).  He stated he could not drive and only goes out when someone can go with him. (T. 152).

  The ALJ discounted the Plaintiff's claimed limitations contending that they could not be "objectively verified". (T. 55).  The record shows that the Plaintiff produced no medical records documenting his disabling conditions except for the three visits to Cooper Clinic in June 2006 and a visit to the ER in October 2007 just one week after he filed his claim for disability. While the ALJ has a duty to develop the record fully and fairly, *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir.1981), even when a claimant has a lawyer, it is of some relevance to us that the lawyer did not obtain (or, so far as we know, try to obtain) any items beneficial to the Plaintiff.  See *Onstad v. Shalala,* 999 F.2d 1232, 1234 (C.A.8 (Minn.),1993)*; Offield v. Barnhart*, 2006 WL 533783, *17+ (N.D.Iowa Mar 02, 2006).

  The court also notes that the Plaintiff alleged that his disabling condition first interfered with his ability to work in 1992. (T. 139) but the Plaintiff had multiple jobs after his alleged onset date. (T. 157).  See *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

  Most troubling is that the Plaintiff obtained employment at Lowes from July 2005 to July 2006. There was nothing indicated by the Plaintiff that prohibited him from performing his job at Lowes and when the Plaintiff was injured it was not because of a pre-existing condition.  The history portion of the  Progress Notes at Cooper Clinic on June 8, 2006 show that the Plaintiff was a "walk in" and he reported that he "went to help move box off higher level thought someone was there to help but slid box by himself now having low back pain". (T. 198).  As noted above that condition resolved itself by June 19, 2006 (T. 193).  It is clear that the Plaintiff

was able to work for a year prior to injuring himself.

**(2) the duration, frequency, and intensity of the pain;**

On June 19, 2006 the Plaintiff went back to Cooper Clinic and the Plaintiff informed his doctor that he was "doing better" and that he had no pain. The previous prescription was not renewed. (T. 193). While the Plaintiff did go to the SEMMC ER on October 22, 2007 complaining of pain he was instructed to return if needed. There is no evidence in the record that the Plaintiff ever sought other treatment for his pain.

Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms considering Plaintiff failed to seek more frequent and substantive treatment. *See Benskin v. Bowen,* 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

**(3) dosage, effectiveness, and side effects of medication;**

The Plaintiff acknowledged on June 8, 2006 when he went to Cooper Clinic for his back injury, that he was not on any medication (T. 198). When the Plaintiff completed his Disability Report on October 17, 2007 he also indicated that he was not on any medication (T. 144) and in his subsequent Disability Reports he again stated that he was not on any medication (T. 170, 179). "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991) (citations omitted) Gray v. Apfel  192 F.3d 799, 804 (C.A.8 (S.D.),1999)

**(4) precipitating and aggravating factors; and**

The only aggravating factor to the Plaintiff's condition was that lower back injury he suffered while working at Lowes but that injury resolved itself.

**(5) functional restrictions**

The ALJ properly considered the functional restrictions of the use of a cane and the muscle atrophy evidenced in the medical record. As noted previously the Plaintiff worked for one year for Lowes with no indication that his functional restrictions interfered with his employment.

The ALJ properly discounted the Plaintiff's assertion of disabling pain.

**C.  RFC**

Of concern to the court is the ALJ determination of the Plaintiff's RFC.  The ALJ determined that the Plaintiff retained the Residual Functional Capacity to "lift and carry 10 pounds occasionally and less than 10 pounds frequently.  He can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. He can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  He cannot climb ladder/ropes/scaffolds and can have no exposure to hazards (such as unprotected heights or heavy machinery).  He cannot carry things with both upper extremities at the same time.  He is required to use a cane.  He can perform unskilled work."  (T. 53)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

**1. Physical Limitations**

While the Plaintiff alleged that his condition interfered with his ability to work since 1992, outside of three visits to Cooper Clinic in June 2006 (T. 193-198) which were occasioned because the Plaintiff hurt his back at work, and one visit to the SEMMC emergency room on October 22, 2007, the Plaintiff's file is completely devoid of any medical history nor does it appear that the Plaintiff ever sought any treatment. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v.*

*Chater*, 54 F.3d 484, 486 (8th Cir.1995).

Dr. McLellan, with Cooper Clinic, saw the Plaintiff on June 8, 2006 diagnosed the Plaintiff with "Low-back pain and spasm" and prescribed Lodine [1] and Norflex [2]. (T. 198). By June 19, 2006 the doctor noted that the Plaintiff had not taken his medications in 3-4 days and that he was "doing better" and had no pain. (T. 193). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

On October 22, 2007, one week after the Plaintiff filed for disability benefits, the Plaintiff was seen by Dr. Cheyne at St. Edwards Mercy Medical Center Emergency Room for chronic back pain with no injury (T. 215-216). Dr. Cheyne diagnosed the Plaintiff with Tethered cord syndrome. (T. 219) and prescribed Mobic [3] and Lortab. He restricted the Plaintiff to light activity, hot showers and suggested that he see a "neurosurgeon a.s.a.p.". He was also instructed to return to the ER if needed (T. 218).

---

[1] Lodine is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Lodine works by reducing hormones that cause inflammation and pain in the body. Lodine is used to relieve the inflammation, swelling, stiffness, and joint pain of osteoarthritis. See www.drugs.com  Viewed October 10, 2011.

[2] Generic Name: orphenadrine (or FEN a drin). Orphenadrine is a muscle relaxant. It works by blocking nerve impulses (or pain sensations) that are sent to your brain. It is used together with rest and physical therapy to treat skeletal muscle conditions such as pain or injury.
See www.drugs.com  Viewed October 10, 2011.

[3] Mobic (meloxicam) is a nonsteroidal anti-inflammatory drug (NSAID). Meloxicam works by reducing hormones that cause inflammation and pain in the body. Mobic is used to treat pain or inflammation caused by arthritis.

The ALJ has a duty to fully and fairly develop the record. It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC and to question a claimant in detail about his abilities. To properly determine a claimant's RFC, an ALJ is "required to consider at least some supporting evidence from a [medical] professional" *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

In light of the Plaintiff's sparse medical records, the ALJ had a consultive evaluation performed by Dr. Hoang on November 26, 2007. He determined that the Plaintiff had a normal range of motion (T. 202) and normal neurological reflexes except that he had muscle weakness in his right leg because of muscle atrophy. (T.. 203). The Plaintiff's gait was normal but the Plaintiff did have some difficulties in limb function. (Id.). Dr. Hoang noted that the Plaintiff would have moderately severe physical limitations for gainful employment. The court finds it significant that Dr. Hoang determined the Plaintiff's impairments to be "moderate" and not "marked". The ALJ had a RFC assessment performed by Dr. Hicks on January 2, 2008 (T. 207-214) and another one performed by Dr. Thomas (T. 231-238) on March 28, 2008. Both Dr. Hicks and Dr. Thomas had the evaluation from Dr. Hoang and the Plaintiff's medical records from Cooper Clinic and the visit to the emergency room available to them at the time of their evaluations.

It is true that we do not consider the opinions of non-examining, consulting physicians standing alone to be "substantial evidence." *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (finding that, where no other evidence supported an ALJ's residual functional capacity determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician"). In the

Plaintiff's case there was no true treating physician. None of the non-examining physicians contradicted the one time examination performed by Dr. Cygnet Schroeder on March 12, 2008 and the ALJ incorporated into his RFC assessment the opinion by Dr. Schroeder that the Plaintiff would be unable to carry things with both hands and was required to use a cane. (T. 227).

### 2. Mental Limitations

The Plaintiff was examined by Dr. Cygnet Schroeder on March12, 2008. Dr. Schroeder noted that the Plaintiff did have some problems with "higher executive functioning in conversation" and that he was slow to respond and process information (T. 226). Dr. Schroeder noted in the Discussion section of his report that the Plaintiff's "Intelligence appears to be a borderline functioning." In addition to Dr. Schroeder's observations the court notes that the Plaintiff's mother completed the Pain Form (T. 148), the Function Report (T. 156) and the Work History Report (T. 164). A diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence. *See Nicola v. Astrue,* 480 F.3d 885, 887 (C.A.8 (Iowa),2007) *citing Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir.2001). As the court has noted above there has not been a diagnosis of borderline intellectual functioning but Dr. Schroeder's comments raised a concern about the intellectual functioning of the Plaintiff. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45.

The ALJ posed the hypothetical question to the VE based upon his determined RFC. "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir.1996). Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996). The converse is also true. *See Newton*, 92 F.3d at 695. However, "[w]hile the hypothetical question must set forth all the claimant's impairments, [citation omitted], it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Roe*, 92 F.3d at 676.

In the present case the Plaintiff's Borderline Intellectual Functioning is not developed and the question is whether the ALJ's qualification in the RFC that the Plaintiff is limited to un-skilled work will encompass a diagnosis of Borderline Intellectual Functioning. According to the regulations, unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *923 20 C.F.R. § 416.968(a). Unskilled work is the "least complex type [ ] of work," SSR 82-41, 1982 WL 31389 (1982), corresponding to a specific vocational preparation (SVP) level of one or two in the DOT. SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). See *Hulsey v. Astrue* 622 F.3d 917, 922 -923 (C.A.8 (Ark.),2010). The ALJ in the Hulsey case posed a hypothetical that limited Hulsey to "work of an unskilled nature *involving only superficial interpersonal contact*." Thus, the ALJ posed a hypothetical that accounted for some degree of mental impairment.

Since the issue of Borderline Intellectual Functioning was not developed in the record the ALJ put no qualifying conditions to the finding that the Plaintiff could perform unskilled work.

The court believes that remand is necessary to allow for the development of the record concerning the Plaintiff's Borderline Intellectual Functioning.

V.	**Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this 12th day of October, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE